Henry C. LOLLAR, Petitioner,

v.

ALABAMA BY–PRODUCTS CORP., and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

Arthur HICKS, Petitioner,

v.

ALABAMA BY–PRODUCTS CORP., and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

Nos. 89–7221, 89–7222.

United States Court of Appeals,
Eleventh Circuit.

Feb. 6, 1990.

Patricia Guthrie Fraley, Cooper, Mitch, Crawford et al., Birmingham, Ala., for petitioner.

Linda M. Meekins, Clerk, Benefits Review Bd., U.S. Dept. of Labor, Washington, D.C., H. Thomas Wells, Jr., Maynard, Cooper, Frierson, et al., Birmingham, Ala., Karen Blank, U.S. Dept. of Justice, Office of Sol., Michael J. Denny, Nicholas J. Leventow, Washington, D.C., for respondents in No. 89-7221.

H. Thomas Wells, Jr., Maynard, Cooper, Frierson, et al., Birmingham, Ala., Karen Blank, U.S. Dept. of Justice, Office of Sol., Michael J. Denney, Nicholas J. Levintow, Washington, D.C., for respondents in No. 89-7222.

Before JOHNSON and EDMONDSON, Circuit Judges, and PECKHAM,* Senior District Judge.

JOHNSON, Circuit Judge:

Henry C. Lollar and Arthur Hicks ("the petitioners") seek review of decisions of the Benefits Review Board ("BRB" or "Board") of the United States Department of Labor ("DOL") denying them benefits under the Black Lung Benefits Act, 30 U.S.C.A. §§ 901–945 ("the Act"), and its

---

* Honorable Robert F. Peckham, Senior U.S. District Judge for the Northern District of California, sitting by designation.

accompanying regulations, 20 C.F.R. Part 718.[1]

## I. FACTS AND PROCEDURAL HISTORY

### A. *Petitioner Lollar*

Lollar was born in 1918, and began working in coal mines in the 1950s. He retired from respondent Alabama By–Products Corporation ("ABC") in 1985, after having worked in coal mining for at least 21 years. Medical records from 1961 to 1984 indicate that Lollar has suffered from coronary heart disease, obesity, chronic obstructive pulmonary disease, and hypertension. Since 1972, x-ray results have also indicated pneumoconiosis ("black lung"). On March 15, 1985, Lollar was examined by Dr. Jack H. Hasson, who found that Lollar suffered from heart disease, pneumoconiosis, interstitial lung disease, and chronic bronchitis. Dr. Hasson found Lollar's lung x-ray taken on that date to indicate parenchymal abnormalities consistent with pneumoconiosis and with interstitial lung disease of multiple etiologies. In a follow-up letter of June 1, 1987, Dr. Hasson stated that, based on the 1985 examination, Lollar suffered a significant drop in his oxygen blood-gas level after only low-level exercise and "would have difficulty in performing work over an 8 hour period." Lollar's lung x-ray taken on May 26, 1987 was read by Dr. James W. Ballard, who found parenchymal abnormalities throughout all six lung zones consistent with pneumoconiosis.

Lollar applied for black lung benefits on February 5, 1985. The DOL initially denied his claim. Following a hearing held on July 14, 1987, an Administrative Law Judge ("ALJ") awarded Lollar benefits on October 2, 1987. The ALJ found that Lollar had pneumoconiosis, that the pneumoconiosis arose from his coal mine employment, and that Lollar suffered a total pulmonary disability due to his pneumoconio-sis. ABC appealed this decision to the BRB on the grounds that the evidence rebutted the regulatory presumption that Lollar's pneumoconiosis arose out of his coal mine employment,[2] and that there was not substantial evidence to support the ALJ's finding that Lollar's total disability was due to pneumoconiosis. On January 27, 1989, the BRB reversed the ALJ solely on the latter ground and denied Lollar benefits.

### B. *Petitioner Hicks*

Hicks was born in 1921, and worked in coal mining for at least 26 years before retiring from ABC in 1983. A majority of Hicks's x-rays between 1974 and 1984 were found by Hicks's physicians to indicate pneumoconiosis. Hicks also has a history of heart attack, ischemic heart disease, hypertension, chronic bronchitis, bullous emphysema, allergies, syncopic disorientation, and chronic arthritis aggravated by obesity. Hicks had smoked one or more packs of cigarettes a day for about thirty years but quit around 1973. Pulmonary function tests showed that Hicks suffered significant respiratory impairment.

Dr. Allan R. Goldstein, who had earlier treated Hicks in 1975 and 1976, examined him again on July 10, 1984, and found that he suffered from shortness of breath and "a definite decrease in his pulmonary functions." Dr. Goldstein concluded that Hicks's pulmonary impairment "would be most consistent with interstitial fibrosis, chest wall deformity, pleural disease, excessive weight or interstitial disease," and gave his impression of Hicks's condition as "[s]hortness of breath with restrictive pulmonary functions and pleural disease by chest x-ray with minimal parenchymal disease, all of which is consistent with coal workers' pneumoconiosis." Most recently, Hicks was examined on May 26, 1987 by his family physician, Dr. Steve Johnson.

---

1. The basis for this Court's jurisdiction is 30 U.S.C.A. § 932(a) (incorporating by reference the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. § 921(c)).

2. 20 C.F.R. § 718.203(b) provides a rebuttable presumption, in the case of a claimant who has worked for ten years or more in coal mining, that any pneumoconiosis suffered by the claimant arose from such employment. It is not disputed that both Lollar and Hicks are entitled to this presumption in this case.

Dr. Johnson, who had treated Hicks for about 12 months, indicated in brief, conclusory answers on a standardized form that Hicks had black lung and chronic bronchitis, that his condition was caused by coal dust exposure, and that he was totally disabled by his lung condition. Dr. Johnson relied, however, on the erroneous premise that Hicks had never smoked, and he failed to provide any medical notes to supplement his report or indicate the observations or tests, if any, on which he based his diagnosis.

Hicks applied for black lung benefits on February 22, 1983, and was initially found entitled to benefits by the DOL. ABC contested that finding and requested a hearing before an ALJ. The hearing was held on June 24, 1987, and the ALJ denied Hicks benefits on September 28, 1987. Hicks appealed to the BRB, which affirmed the ALJ's decision on January 27, 1989.

### C. *The Consolidated Appeal*

Lollar's and Hicks's petitions for review in this Court have been consolidated. In Lollar's case, it is not contested before this Court that Lollar has pneumoconiosis, that his pneumoconiosis arose from his coal mine employment,[3] and that he suffers from a totally disabling pulmonary impairment. Thus, the only issue presented for

our decision in Lollar's case is whether Lollar's pulmonary disability was "due to" his pneumoconiosis within the meaning of 20 C.F.R. § 718.204(a). In Hicks's case, it is not contested before this Court that Hicks has pneumoconiosis and that his pneumoconiosis arose from his coal mine employment. Thus, the issues presented in Hicks's case are whether Hicks suffered from a totally disabling pulmonary impairment within the meaning of 20 C.F.R. § 718.204(c), and whether such disability was "due to" pneumoconiosis within the meaning of 20 C.F.R. § 718.204(a).

### II. DISCUSSION

### A. *Standard of Review*

Decisions of the ALJ are reviewable only as to whether they are in accordance with law and supported by substantial evidence in light of the entire record. This deferential standard of review binds both the BRB and this Court. *See Jordan v. Benefits Review Bd.*, 876 F.2d 1455, 1459 (11th Cir.1989); *Stomps v. Director, OWCP*, 816 F.2d 1533, 1534 (11th Cir.1987); *Alabama By-Products Corp. v. Killingsworth*, 733 F.2d 1511, 1515 (11th Cir.1984). Because this Court applies the same standard of review to ALJ decisions as does the BRB, our review of BRB decisions is *de novo*.[4] "Substantial evidence" has been

---

**3.** ABC argued before the BRB that the ALJ erred in finding that ABC had failed to rebut Lollar's section 718.203(b) presumption that his pneumoconiosis arose from coal mine employment. The BRB found it unnecessary to reach that issue, basing its reversal of the ALJ solely on the ground that the causal link between pneumoconiosis and total disability had not been established. Before this Court, ABC defends the BRB's decision solely on the latter ground, and does not urge this Court to reverse the ALJ on the alternative ground which it presented to the BRB. Under these circumstances, we find that ABC has abandoned the section 718.203(b) issue, and we therefore decline to consider reversing the ALJ on this ground. *See Federal Savings & Loan Ins. Corp. v. Haralson*, 813 F.2d 370, 373 & n. 3 (11th Cir.1987).

**4.** The caselaw in this Circuit is somewhat ambiguous on this point. *Stomps*, for example, stated: "Our review of the Board's determination is also limited in scope. We consider only whether the Board erred by upholding the ALJ's decision." 816 F.2d at 1534. *Stomps* then pro-

ceeded, however, to review *de novo* the BRB's determination that the ALJ decision in that case was "supported by substantial evidence." *Id.* at 1536; *accord Foreman v. Director, OWCP*, 794 F.2d 569, 571 (11th Cir.1986); *Killingsworth*, 733 F.2d at 1515–16. As Judge Merritt astutely noted in a recent Sixth Circuit case, "Congress has expressly placed the power to make conclusive findings of fact with the ALJ, and limited the Board's function to determining whether the ALJ's findings are supported by substantial evidence. *Under this scheme we are to defer to the ALJ, not to the Board.*" *Zimmerman v. Director, OWCP*, 871 F.2d 564, 567 (6th Cir.1989) (emphasis added); *see also Thomas v. United States Steel Corp.*, 868 F.2d 1523, 1524 (11th Cir.1988) (while describing this Court's review as "limited," holding that we "must determine whether the correct legal standards have been applied and whether the BRB has shown the proper deference to the ALJ's factual findings"). Of course, where the BRB upholds the ALJ's decision, this Court's limited review of the ALJ effectively cloaks the BRB's decision with the same deference to which the ALJ is entitled.

defined as "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation and internal quotation marks omitted).

█ It is well established that "courts must defer to an agency's consistent interpretation of its own regulation unless it is 'plainly erroneous or inconsistent with the regulation.'" *Director, OWCP v. Mangifest*, 826 F.2d 1318, 1323 (3d Cir.1987) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)); *accord Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 159, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987). We owe this deference, however, only to the Director of the Office of Workers' Compensation Programs of the DOL ("the Director") as the relevant policymaker in this case; the BRB is not a policymaker and its interpretations are not entitled to any special deference. *See Potomac Electric Power Co. v. Director, OWCP*, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980); *Mangifest*, 826 F.2d at 1323.

### B. *Governing Law*

Generally speaking, a miner seeking black lung benefits under the Act must establish: "(1) that he suffers from pneumoconiosis, (2) that his pneumoconiosis arose from his coal mine employment, and (3) that he is totally disabled due to the pneumoconiosis." *Mangus v. Director,*

*OWCP*, 882 F.2d 1527, 1529 (10th Cir.1989). The present case revolves around the third factor, which is governed by 20 C.F.R. § 718.204(a). Section 718.204(a) states that "[b]enefits are provided under the Act for or on behalf of miners who are totally disabled *due to* pneumoconiosis." (Emphasis added.) Section 718.204(b) defines "total disability," stating that

> a miner shall be considered totally disabled if pneumoconiosis as defined in § 718.201[5] *prevents or prevented* the miner: (1) From performing his or her usual coal mine work; and (2) From engaging in gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity over a substantial period of time. [Emphasis added.]

Section 718.204(c) provides various criteria by which the existence of the total pulmonary or respiratory disability contemplated by section 718.204(b) may be established. Section 718.204(c)(5) specifically notes, however, that "[e]xcept as provided in § 718.305,[6] proof that the miner suffers or suffered from a totally disabling respiratory or pulmonary impairment as defined in paragraphs (c)(1), (2), (4) and (5) of this section shall not, by itself, be sufficient to establish that the miner's impairment is or was *due to* pneumoconiosis." (Emphasis added.)

█ It is thus clear that section 718.204 embodies two essential elements which a claimant must establish in order to qualify

---

**5.** Pneumoconiosis is defined in § 718.201. Standards for determining whether a claimant has pneumoconiosis are set forth in § 718.202. Furthermore, § 718.203(a) provides that in order to qualify for benefits, a claimant must establish that his pneumoconiosis "arose at least in part out of coal mine employment." Section 718.203(b), however, provides that where a miner has shown at least 10 years of coal mine employment, he is entitled to a rebuttable presumption that his pneumoconiosis arose out of his employment. *See* footnote 2, *supra.*

**6.** Section 718.305 applies only to coal miners who filed black lung claims prior to January 1, 1982, and who had at least 15 years underground coal mine employment. If such claim-

ants could establish that they had a totally disabling pulmonary impairment, then they were entitled to a rebuttable presumption that they were totally disabled due to pneumoconiosis, even in the absence of direct evidence of causation or of the existence of pneumoconiosis itself. *See* 20 C.F.R. § 718.305(a). The presumption could be rebutted only by evidence affirmatively showing that the "total disability did not arise in whole or in part out of dust exposure in the miner's coal mine employment or ... that the miner does not or did not have pneumoconiosis." *See* 20 C.F.R. § 718.305(d). Lollar and Hicks are not entitled to this presumption in this case because they filed their claims after January 1, 1982.

for benefits under the Act: (1) The claimant must establish that he has a total pulmonary disability according to the criteria of § 718.204(c); and (2) the claimant must establish that his total pulmonary disability is in some sense caused by or "due to" his pneumoconiosis. *See Zimmerman v. Director, OWCP*, 871 F.2d 564, 566 (6th Cir. 1989) ("benefits hinge on a finding that total disability is due not just to respiratory or pulmonary impairment but to pneumoconiosis"); *accord Mangifest*, 826 F.2d at 1320; *Strike v. Director, OWCP*, 817 F.2d 395, 399 (7th Cir.1987). Each of these elements must be established by a preponderance of the evidence. *See* 20 C.F.R. § 718.403.

■ The central issue in this case concerns the nature of the causal link required under section 718.204. Respondent ABC does not articulate precisely what it believes this link should entail, beyond urging that the miner's total disability must be "caused" by his pneumoconiosis. Because ABC urges affirmance of the BRB's decisions in both of the cases under review, however, it presumably adopts the causation standard relied upon by the BRB. The BRB, in its unpublished Decision and Order in Lollar's case, relied upon its earlier decision in *Wilburn v. Director, OWCP*, 11 Black Lung Reporter ("B.L.R.") 1–135 (Ben.Rev.Bd.1988), in holding that a claimant must establish that his pneumoconiosis "is, in and of itself, totally disabling." *See Wilburn*, 11 B.L.R. at 1–138.

The petitioners argue that the causation standard under section 718.204 is much looser, requiring only that pneumoconiosis be a "major element" of the overall disability. They rely for this contention on this Court's opinion in *Stomps*, 816 F.2d at 1536, where we observed that "[t]he ALJ's conclusion that Stomps' multiple medical problems precluded recovery for his chronic obstructive pulmonary disease reflects a misunderstanding of the law governing pneumoconiosis benefits." The Director, in his initial brief as the federal respondent before this Court, urged adherence to the *Wilburn* standard[7] and rejection of the petitioners' more lenient formulation. At oral argument, however, the Director shifted his position in light of four cases recently decided by the Third, Fourth, Sixth, and Tenth Circuits. On the basis of those cases, as explained in his supplemental post-argument brief submitted at our direction, the Director urges us to reject the *Wilburn* causation standard. The petitioners joined the Director at oral argument in urging reliance upon these cases.

We note first of all that *Stomps* is not directly on point. There was no real dispute in *Stomps* that the claimant suffered a totally disabling pulmonary impairment, and that his disability was caused by a lung disease indicative of pneumoconiosis.[8] Rather, the central issue in *Stomps* was the causal link between the claimant's pneumoconiosis and his coal mine employment. Unlike Lollar and Hicks, the claimant in *Stomps* had worked as a coal miner for only nine years and was thus ineligible for the section 718.203(b) presumption that his pneumoconiosis arose from his employment. He therefore had to demonstrate "such a relationship" under section 718.-203(c). The bulk of the *Stomps* opinion, *see* 816 F.2d at 1535–37, was devoted to this causal relationship, an issue separate

7. The Director did not specifically cite *Wilburn* in his initial brief, but his main argument heading repeated almost verbatim the *Wilburn* formulation, stating that entitlement to benefits "is established only if the evidence demonstrates, *inter alia,* that the miner is totally disabled due to pneumoconiosis in and of itself."

8. There is, at first glance, a paradox in the black lung regulations, which *define* "pneumoconiosis" as "a chronic dust disease of the lung ... arising out of coal mine employment," 20 C.F.R. § 718.201, and yet, in 20 C.F.R. § 718.203, provide standards for "[e]stablishing [the] relationship of pneumoconiosis to coal mine employ-

ment." Section 718.201 also states that "[t]his definition includes ... coal workers' pneumoconiosis ... arising out of coal mine employment." The answer to the paradox seems to be that the term "pneumoconiosis" is used in more than one sense. Thus, it appears that section 718.201's definition of "pneumoconiosis" is satisfied only when "pneumoconiosis" is clinically diagnosed under section 718.202 *and* when either the causation standard or presumption set forth in section 718.203 is satisfied. *See Southard v. Director, OWCP*, 732 F.2d 66, 70–72 (6th Cir.1984).

from and precedent to the causal link between pneumoconiosis and total pulmonary disability under section 718.204. *Cf. Stomps*, 816 F.2d at 1537–38 (briefly addressing "[t]he remaining question of whether Stomps is totally disabled by his pneumoconiosis"). The source of the generous causation language in *Stomps* on which the petitioners would rely, *see id.* at 1536, is 20 C.F.R. §§ 718.201 and 718.-203(a), which address solely the link between pneumoconiosis and coal mine employment.[9]

While no Eleventh Circuit case provides a detailed analysis of the "due to" causation requirement under section 718.204, our resolution of this issue is greatly aided by the exhaustive and well-reasoned opinions recently handed down in *Mangus v. Director, OWCP*, 882 F.2d 1527 (10th Cir. 1989), *Bonessa v. United States Steel Corp.*, 884 F.2d 726 (3d Cir.1989), and *Adams v. Director, OWCP*, 886 F.2d 818 (6th Cir.1989).[10]

Judge Mansmann's scholarly opinion for the Third Circuit in *Bonessa* analyzed the legislative history of the Black Lung Benefits Act and the alternately constricting and liberalizing amendments to it enacted in 1972, 1977, and 1981. *See* 884 F.2d at 727–30. She noted that under the interim black lung regulations set forth at 20 C.F.R. Part 727, which governed claims filed on or before March 31, 1980,[11] it was clearly unnecessary for a claimant's total pulmonary disability to stem *entirely* from his pneumoconiosis. Section 727.203 established a presumption that claimants with at least 10 years coal mining employment were "totally disabled due to pneumoconio-

sis" if they could produce certain evidence either of the existence of pneumoconiosis or of a totally disabling pulmonary impairment. The causation presumption could be rebutted if, *inter alia*, "the total disability ... of the miner did not arise in whole *or in part* out of coal mine employment." 20 C.F.R. § 727.203(b)(3) (emphasis added).

*Bonessa* then proceeded to analyze the background and language of the Part 718 permanent regulations, to determine whether they, like the Part 727 regulations, supported the "conclusion that pneumoconiosis need only be a contributing, and not a sole, cause of the disability." 884 F.2d at 728. *Bonessa* compared section 718.204 with section 718.205, which provides for benefits "to eligible survivors of a miner whose death was due to pneumoconiosis." 20 C.F.R. § 718.205(a). Section 718.205, unlike section 718.204, provides a definition of "due to," stating, *inter alia*, that "death will be considered to be due to pneumoconiosis ... [w]here pneumoconiosis was a substantially contributing cause or factor leading to the miner's death." 20 C.F.R. § 718.205(c). Analogizing from this standard, *Bonessa* concluded that pneumoconiosis need not be shown to be the sole cause of a claimant's total pulmonary disability under section 718.204; it therefore rejected the BRB's stringent causation standard as enunciated in *Wilburn*. *See Bonessa*, 884 F.2d at 731–34. *Bonessa* held that the causation requirement of section 718.204 is simply "an admonition that one may not prove total disability due to pneumoconiosis simply by demonstrating the presence of any respiratory or pulmonary ailment. Rather a miner must show that pneumoco-

---

**9.** Section 718.201 states that "a disease 'arising out of coal mine employment' includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment *significantly related to, or substantially aggravated by,* dust exposure in coal mine employment." (Emphasis added.) Section 718.203(a) states that "[i]n order for a claimant to be found eligible for benefits under the Act, it must be determined that the miner's pneumoconiosis arose *at least in part* out of coal mine employment." (Emphasis added.)

**10.** The Director also directs our attention to the Fourth Circuit's recent decision in *Napier v.*

*Director, OWCP*, 890 F.2d 669 (4th Cir.1989). This brief opinion does not address in any depth the causation standard of section 718.204, however, and we find it unnecessary to rely upon this case.

**11.** *See* 20 C.F.R. §§ 718.1(b) and 718.2 (providing that claims filed on or before March 31, 1980 are governed by Part 727, regardless of whether the final disposition of the claim occurred after March 31, 1980, and that claims filed after March 31, 1980 are governed by Part 718).

niosis is a substantial contributor to the disability." *Id.* at 734.

The Sixth Circuit in *Adams*, 886 F.2d at 823–25 & n. 7, reached much the same result, also relying on analogies to the Part 727 interim regulations and section 718.205. Rejecting the "in and of itself" causation standard of *Wilburn*, *Adams* held that a claimant "must affirmatively establish only that his totally disabling respiratory impairment (as found under section 718.-204(c)) was due 'at least in part' to his pneumoconiosis." *Id.* at 825. Similarly, the Tenth Circuit in *Mangus*, 882 F.2d at 1531, concluded that the appropriate causation standard under section 718.204 is whether "the pneumoconiosis is at least *a contributing cause.*" [12] *Mangus*, however, found that the "burden would be inappropriately heavy were we to require that [the miner] also prove that the causal nexus fit a description which is embodied in such nebulous terms as 'significant' or 'substantial.' " *Id.*[13]

We agree with the considered conclusion of our sister Circuits, and with the current position of the Director, that the BRB's standard of causation under *Wilburn* is unduly stringent. We agree with the Tenth Circuit that a more lenient standard of causation "is consistent with [the] congressional intent of liberal assistance to totally disabled coal miners." *Mangus*, 882 F.2d at 1532. To the extent that *Mangus* declined to require a "significant" or "substantial" causal link, however, we find more persuasive the Third Circuit's analogy in *Bonessa* to the causation standard of section 718.205(c), which explicitly defines "due to" as requiring a "substantially contributing cause." We note that the Sixth Circuit in *Adams*, while not using the terms "substantial" or "significant" in its standard, was careful to observe that "[n]othing in this record suggests that Adams' pneumoconiosis played only an infinitesimal or de minim[i]s part in his total-

ly disabling respiratory impairment, so we need not consider here whether such a finding ... would support a denial of benefits under the Act." *Adams*, 886 F.2d at 826 n. 11. We believe *Bonessa's* phrasing of the test answers this concern.

In sum, we hold that a black lung claimant whose claim was filed on or after January 1, 1982, must, in order to qualify for benefits under section 718.204, establish that his pneumoconiosis was a substantial contributing factor in the causation of his total pulmonary disability.

### C. *Application*

1. Petitioner Lollar

■ The ALJ in Lollar's case failed to state any findings of fact regarding, or devote any discussion to, the causation of the total pulmonary disability from which he found that Lollar suffered. The BRB reversed the ALJ's conclusory holding that Lollar is "totally disabled due to pneumoconiosis" on the ground that there was not substantial evidence to support causation under the stringent *Wilburn* standard, which we reject today. We are reluctant to comb the record on appeal for substantial evidence in support of the ALJ's decision under the causation standard we adopt today, when neither the ALJ nor the BRB has had the opportunity to apply this standard in the first instance, and when neither we nor the BRB have any way of knowing what standard the ALJ applied. We therefore VACATE the BRB's Decision and Order in Lollar's case and REMAND the case to the BRB with instructions to VACATE the ALJ's Decision and Order as to the total disability causation issue and REMAND the case to the ALJ for the purpose of stating specific findings of fact and conclusions of law on this issue in accordance with this opinion. Because neither respondent in this case has preserved before this Court any other issues regarding the ALJ's

---

**12.** *Mangus* based its causation standard on this Court's discussion of the causal link between pneumoconiosis and coal mine employment in *Stomps, supra,* and on the Sixth Circuit's similar analysis in *Southard v. Director, OWCP,* 732 F.2d 66, 71 (6th Cir.1984). It found that "[t]hese decisions, while not dispositive, offer guidance." *Mangus,* 882 F.2d at 1531.

**13.** Unlike *Bonessa, Mangus* thus declined to rely on a strict analogy to the section 718.205(c) causation standard, an analogy urged by the coal mining company in *Mangus. See Mangus,* 882 F.2d at 1530 n. 8.

award of benefits to Lollar, *see* footnote 3, *supra*, the ALJ's findings on all other issues in this case are not to be disturbed hereafter.

### 2. Petitioner Hicks

The BRB in Hicks's case, in affirming the ALJ's Decision and Order denying benefits, stated that "[the ALJ] concluded that claimant does not suffer from a totally disabling respiratory impairment pursuant to Section 718.204(c)." The BRB affirmed the decision on that basis and did not reach the issue of causation. Respondent ABC, in its brief and at oral argument, appears to have proceeded in reliance on this characterization of the ALJ's holding. A careful examination of the ALJ's opinion, however—which, as counsel for the Director observed at oral argument, is "not a hallmark of clarity"—convinces us that the BRB may have misread the ALJ's holding.[14]

The ALJ found, on the basis of three qualifying pulmonary function tests showing clear respiratory impairment, that Hicks had "met the criteria under § 718.204(c)(1)" for total pulmonary disability. The ALJ noted that Hicks's arterial blood-gas tests failed to qualify under section 718.204(c)(2). The ALJ then proceeded to consider whether any "reasoned medical judgments" on the part of Hicks's doctors supported a finding of total pulmonary disability under section 718.204(c)(4). Only Dr. Johnson expressly stated the opinion that Hicks suffered a total pulmonary disability, and the ALJ properly discounted his judgment because of the lack of supporting medical notes or test results, the failure to specify the basis for his diagnosis, and his reliance on the erroneous premise that Hicks had never smoked. The ALJ therefore found that Hicks had failed to "establish total disability on a pulmonary or respiratory basis within the meaning of § 718.204(c)(4)." It is clear from the express language of the regulations, however, that "[i]n the absence of contrary probative evidence, evidence which meets the standards of *either* paragraphs (c)(1), (2), (3), (4) or (5) of this section shall establish a miner's disability." 20 C.F.R. § 718.204(c) (emphasis added).[15] Thus, the fact that the ALJ found insufficient evidence of total disability under paragraph (c)(2) or (c)(4) would not, by itself, negate the ALJ's explicit finding that Hicks *had* qualified under paragraph (c)(1).

The ALJ, in a section headed "Other Relevant Evidence," discussed evidence that Hicks, apart from his pulmonary problems, is totally disabled by his arthritic condition, which is aggravated by his obesity. The ALJ further noted that Hicks's attacks of syncopic disorientation would also "seem to preclude outside employment of any kind." The concluding section of the ALJ's opinion stated that "[Hicks] has minimal disease of his functioning lung from any cause as Dr. Goldstein, a pulmonary specialist determined, and I accept, notwithstanding the results of pulmonary function tests which probably, as two physicians suggested[,] are reflective of [Hicks's] obesity." The ALJ finally concluded as follows:

> [Hicks's] own testimony with regard to his significant arthritic complaints and the reason for his cessation of work, is consistent with Dr. Goldstein's evaluation of his respiratory condition in that it reveals no perceived incapacity of a respiratory or pulmonary nature. I find that … [Hicks] does not have a totally disabling respiratory or pulmonary impairment *due to pneumoconiosis* and therefore is not entitled to benefits under the Act. (Emphasis added.)

There are two possible interpretations of the ALJ's opinion. First, the ALJ may have found that Dr. Goldstein's opinion constituted "contrary probative evidence" negating the pulmonary function tests under section 718.204(c), and that Hicks therefore had not established a total pulmonary

---

**14.** This was suggested by counsel for the petitioners at oral argument and by the Director in his supplemental post-argument brief.

**15.** Paragraph (c)(3) relates to evidence of "cor pulmonale with right sided congestive heart failure." Paragraph (c)(5), which relates to proof of total disability in claims involving deceased miners, has no relevance to this case on this point.

disability. Second, the ALJ may have found that Hicks was in fact totally disabled in the pulmonary sense but that he had failed to establish the required causal link to his pneumoconiosis. The latter interpretation may explain the ALJ's references to Hicks's obesity and smoking-related emphysema as possible causes for his pulmonary disability.[16] If the former interpretation were intended, the ALJ's reliance on Dr. Goldstein's opinion was clearly misplaced. Dr. Goldstein's medical report of July 10, 1984 did not in any sense contradict the findings of the pulmonary function tests; on the contrary, Dr. Goldstein found that Hicks suffered from "a definite decrease in his pulmonary functions." Far from finding that Hicks had "minimal disease of his functioning lung," as characterized by the ALJ, Dr. Goldstein found "definite pleural disease" and "interstitial fibrosis" and stated his overall impression of Hicks's condition as "[s]hortness of breath with restrictive pulmonary functions and pleural disease by chest x-ray with minimal parenchymal disease, *all of which is consistent with coal workers' pneumoconiosis.*" (Emphasis added.)

Because the ALJ found qualifying evidence for Hicks's total pulmonary disability under section 718.204(c)(1) and did not adequately specify any substantial contrary evidence, and because we do not find any such contrary evidence in the record, we find that Hicks has established a total pulmonary disability. On the issue of causation, we note that substantial evidence clearly exists in the record, on the basis of Dr. Goldstein's report alone, which would support a finding of causation under the standard we adopt today.[17] As in Lollar's case, however, neither the ALJ nor the

BRB has had the opportunity to apply that standard. Therefore, we VACATE the BRB's Decision and Order in Hicks's case, and REMAND the case to the BRB with instructions to VACATE the ALJ's Decision and Order and REMAND the case to the ALJ for the sole purpose of deciding whether Hicks's total pulmonary disability was caused by his pneumoconiosis under the standard set forth in this opinion.

### III. CONCLUSION

For the foregoing reasons, the petitions for review in each of the cases before us are GRANTED and the decisions of the BRB are VACATED and REMANDED for further proceedings consistent with this opinion.

---

**16.** Under either interpretation, it is difficult to understand the ALJ's emphasis on Hicks's arthritic and other disabilities. Such unrelated disabilities, no matter how severe, would not constitute "contrary probative evidence" tending to negate a concurrent finding of total *pulmonary* disability. And once a total pulmonary disability is established, such unrelated disabilities obviously are irrelevant to the *causation* of the pulmonary disability. So long as total pulmonary disability is properly established, a claimant is not disqualified simply because he also suffers from other debilitating or disabling conditions. This much is clear under *Stomps,*

where this Court found total disability on the basis of qualifying blood-gas tests under section 718.204(c)(2), *see* 816 F.2d at 1537–38, irrespective of the fact that the claimant in that case also "suffer[ed] from atherosclerotic cardiovascular disease, obesity, tobacco abuse and diabetes," 816 F.2d at 1536–37.

**17.** This is not to prejudge whether the ALJ on remand should so find in the first instance. The record in Hicks's case also indicates that his pulmonary disability may be due largely to his obesity and his history of heavy smoking.