JIM WALTER RESOURCES, INC., Petitioner,

v.

Edward ALLEN; Director, Office of Workers Compensation Programs, United States Department of Labor, Respondents.

No. 92–6044.

United States Court of Appeals, Eleventh Circuit.

July 16, 1993.

Braxton Schell, Jr., Bradley, Arant, Rose & White, Birmingham, AL, for petitioner.

Michael J. Denney, Jeffrey S. Goldberg, U.S. Dept. of Labor, Washington, DC, for respondent.

Anthony Joseph Cicconi, Shaffer & Shaffer, Madison, WV, for Allen.

Before EDMONDSON and CARNES, Circuit Judges, and HILL, Senior Circuit Judge.

PER CURIAM:

The rights of a coal miner to receive damages from his employer for pneumoconiosis (lung disease) are in dispute. The Administrative Law Judge ("ALJ") granted respondent miner benefits. The Benefits Review Board ("Board") affirmed this decision on appeal. Because we conclude that such relief was justified, we AFFIRM.

## I. Facts and Background

Edward Allen ("Allen") worked as a maintenance foreman and supervisor in a coal mine for Jim Walter Resources, Inc., ("JWR") from early 1984 to early 1986. Allen experienced breathing difficulties towards the end of this time. JWR laid Allen off in March 1986. Allen had worked in the coal mining industry for 36 years.

Allen testified that he carried bags of rock dust and other heavy loads, and ran up to two miles a day. Allen explained that the air was always dusty because "it was an extremely gassy mine and it took a large volume of air to keep the gas swept out of the faces.... In order to get that much air to the face, the air picked the dust up out of the mine as it went along." Tr. at 12. Allen claimed that his breathing of this coal dust, especially when exerting himself with heavy work, resulted in a disabling lung condition. Allen also said that his condition deteriorated towards the end of his employment.

Allen concedes that the union contract required other miners to perform some of the

heavy work. Still, he contends that, in practice, he had to do this work so that his crew could complete its scheduled assignments: "we [Allen and the other foremen] weren't supposed to do [the heavy work] but when it came right down to the bare facts we had to do [the heavy work]." Tr. at 23. The record indicates that other foremen were expected to perform similar heavy tasks and that Allen received good reviews from JWR management for his work.

Several doctors examined Allen from 1983 to 1988. In October 1983, Dr. Rasmussen found Allen suffering from a "moderate impairment in respiratory functional capacity as reflected by the impaired gas exchange at rest and during graded exercise." (CX 2) In September 1986, Dr. Daniel determined that Allen suffered from coal workers' pneumoconiosis, but declared that Allen "should be able to perform [the] usual activities of a coal miner." (DX 6) In November 1988, Dr. Rasmussen found a "moderate loss of respiratory function as reflected by the resting and exercise impairment in oxygen transfer and hypoxia." (CX 1) Although some of the tests were negative, three of Rasmussen's arterial blood gas studies produced qualifying values when Allen was at rest. Dr. Rasmussen said that Allen would be "totally disabled for resuming his former coal mine employment with its attendant requirement for heavy manual labor." (CX 1)[1]

Several doctors also testified that Allen's X-rays indicated the presence of pneumoconiosis. Although other X-ray readers disputed these findings, the ALJ determined that the X-rays, by themselves, established the existence of pneumoconiosis.

The ALJ concluded that Allen was totally disabled from resuming his coal mining work and was eligible for black lung disability benefits from employer JWR. The Board affirmed. Petitioner JWR appeals.

## II. Discussion

■ To establish his right to black lung disability benefits, plaintiff must show that he suffers from pneumoconiosis, that the

---

1. The ALJ did not credit the testimony of Dr. Russakoff, who claimed that Allen was not suffer-

ing from serious problems. Russakoff had not examined Allen directly.

pneumoconiosis arose out of his coal mine employment, and that he is totally disabled due to pneumoconiosis. *Lollar v. Alabama By–Products Corp.*, 893 F.2d 1258, 1262 (11th Cir.1990).

## A. Allen's Health

■ Petitioner urges us to reverse the ALJ's determination that Allen suffered from pneumoconiosis. Although some of the tests were negative, three of Dr. Rasmussen's arterial blood gas studies produced qualifying values at rest.[2] In addition, various X-ray readers indicated that Allen was suffering from pneumoconiosis. Given these clinical data, in conjunction with Allen's testimony, the ALJ's conclusions on Allen's health are supported by substantial evidence in the light of the entire record. *Lollar*, 893 F.2d at 1261.

## B. Allen's Total Disability [3]

■ Petitioner also contends that Allen was not "totally disabled" for purposes of performing his duties as a maintenance foreman. JWR notes that Allen's contractual job duties did not require the heavy work that caused Allen trouble. According to petitioner, Allen's heavy work activities instead should be treated as "voluntary" acts that were outside the scope of his employment.[4]

■ We disagree. An element of volition does not necessarily bar Allen from recovering damages resulting from heavy work. To determine the scope of Allen's employment

for purposes of "total disability," the ALJ must make a fact-specific determination about Allen's *actual work*. *See generally, Brown v. Cedar Coal Co.*, 8 BLR 1–86, 1–88 (1985) ("The determination of what is a claimant's usual coal mine employment is made on a case by case basis and will vary depending on the facts in each case."); *Shortridge v. Beatrice Pocahontas Coal Co.*, 4 BLR 1–534, 1–539 (1982) ("... usual coal mine work is the most recent job the miner performed regularly and over a substantial period of time").

Allen's employment with JWR encompassed all the tasks that were, in fact, a regular part of his coal-mining activities,[5] so long as management did not actively forbid him from doing these tasks (including heavy work). JWR's deliberate ignorance, if any, about the actual scope of Allen's work would not excuse management now from liability. Nor would half-hearted directions to Allen to stop his heavy work protect JWR.

Based on our review of the record, we agree that the ALJ properly concluded that Allen's employment required heavy manual labor. Uncontradicted testimony indicated that other foremen were expected to do such heavy work, that Allen in fact did such work, and that JWR approved of the work that Allen was doing. Nor did the ALJ err in crediting Dr. Rasmussen's report, which found that Allen was "totally disabled" from doing such heavy manual labor. Given the

2. Some of the negative tests should never have been conducted. The comments to 20 C.F.R. § 718.105(b) indicate that an arterial blood gas study should not be conducted after exercise if the "at rest" study is positive: "The Department does not believe that individuals who have arterial blood oxygen pressures below the disabling level at rest should be subjected to an exercise test to determine whether there is a slight rise in their oxygen tension during exercise."

3. Under 20 C.F.R. § 718.203(b), a miner who has worked for 10 or more years in the coal mining industry is entitled to a rebuttable presumption that his pneumoconiosis arose from coal mine employment.

4. Petitioner also observes that Dr. Rasmussen's 1983 and 1988 studies closely resembled one another. Petitioner suggests that, if these studies are to be credited, then respondent must have

been "totally disabled" even before starting work for JWR, so that JWR did not cause his disability.

This argument is without merit. The fact of a miner's continuing employment does not preclude a total disability finding. 30 U.S.C. § 902(f)(1)(B)(ii); *see also Farmer v. Rogers*, 839 F.2d 269, 273 (6th Cir.1988). In addition, evidence exists that Allen's condition worsened towards the end of his employment with JWR. The ALJ reasonably could have concluded that Allen became totally disabled in the course of his coal-mining duties for JWR.

5. Allen's contract with JWR provides only a starting point for the determination of the actual scope of his employment. The ALJ may consider, among other things, Allen's day-to-day practices, the activities of other foremen in similar positions, and the company's views and reviews of Allen's job performance.

record on Allen's scope of employment and Dr. Rasmussen's medical findings, the ALJ's award of damages was supported by substantial evidence.

AFFIRMED.