940 F.2d 618
 Dallas LAUDERDALE, on behalf of Anderson LAUDERDALE, a
deceased miner, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAM, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 90-7206.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 30, 1991.
 
 Joseph T. McGinness, Cleveland, Ohio, for petitioner.
 Robert E. Kirschman, Jr., Michael J. Denney, Paul L. Frieden, Elizabeth J. Shapiro, Cathryn Celeste Helm, U.S. Dept. of Labor, Office of Sol. and Benefits Review Bd., U.S. Dept. of Labor, Washington, D.C., for respondent.
 Petition for Review of an Order of the Department of Labor Benefits Review Board.
 Before COX and BIRCH, Circuit Judges, and ENGEL*, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 After wending its way through the statutory and regulatory black lung benefits scheme for more than two decades, this claim for benefits is before us on appeal from a decision of the Benefits Review Board (the Board), which reversed a decision of an administrative law judge (ALJ). Because the decision of the ALJ was not supported by substantial evidence in the record as a whole, we affirm the Board's decision.
 
 Background
 
 2
 This claim is pressed by Dallas Lauderdale, the son of the deceased miner, Anderson Lauderdale (Lauderdale), who originally filed the claim. The Department of Labor has already determined that Lauderdale's family is entitled to benefits for total disability due to pneumoconiosis (black lung); the only question before us is from what date should those benefits be paid. The ALJ decided that Lauderdale's benefits should be paid from January 1, 1974, the earliest date from which benefits can be paid for Lauderdale's category of claim. The ALJ found that the medical evidence about the date of onset of Lauderdale's total disability was inconclusive, but that when the lay evidence from Lauderdale's friends and family was added, the evidence as a whole established that Lauderdale was totally disabled at some time before January 1, 1974. The ALJ thus awarded benefits from that date until the date of Lauderdale's death on August 26, 1980.
 
 
 3
 The Board, however, reversed the ALJ's decision. The Board concluded that the ALJ had erred in interpreting the regulation that prescribes the method for determining the date from which benefits should be paid for claims such as Lauderdale's. That regulation, 20 C.F.R. Sec. 727.302(c)(1), reads as follows:
 
 
 4
 In the case of a miner whose claim is reviewed and finally approved under Sec. 727.106, benefits shall be payable for all periods of eligibility beginning with the month of onset of total disability due to pneumoconiosis or January 1, 1974, whichever is later. Where the evidence does not establish the month of onset, benefits shall be payable from the month during which the miner elected review under Sec. 727.104.
 
 
 5
 The Board observed that the ALJ had not been able to determine a specific month of onset for Lauderdale's total disability, but simply decided that since it was before January 1, 1974, the earliest date from which benefits were allowed, the benefits would be paid from the earliest allowable date. The Board held that such an interpretation was contrary to the plain language of the statute, which required either that the ALJ find a specific month of onset or that benefits be paid from the month in which Lauderdale elected review of his previously denied claim. Since the ALJ did not find a specific month of onset, the Board held that Lauderdale's benefits should be paid from the first day of the month in which Lauderdale elected review, March 1, 1978.
 
 
 6
 In this appeal, Dallas Lauderdale argues that the Board's interpretation of the regulation is incorrect, and that therefore the Board erred in reversing the decision of the ALJ. Representing the Department of Labor, the Director of the Office of Workers' Compensation Programs (Director) agrees with Dallas Lauderdale that the Board's interpretation of the regulation is wrong, but argues that we should nonetheless affirm the Board's decision for a different reason. In the Director's opinion, the ALJ erred by relying solely on lay evidence to establish the date of disability of a miner whose record included substantial medical evidence. The Director further argues that even if the ALJ properly relied on the lay evidence, the lay evidence does not provide substantial evidence, when the record is considered as a whole, for the ALJ's finding that Lauderdale was totally disabled before January 1, 1974.
 
 Standard of Review
 
 7
 We recently explained, in Alabama Dry Dock and Shipbuilding Corp. v. Sowell, 933 F.2d 1561 (11th Cir.1991), our approach to reviewing a decision by the Board:
 
 
 8
 We review the Board's decisions to determine whether the Board has adhered to its statutory standard of review and whether it has erred in interpreting the law. This court, and the Board, must uphold the factual determinations of the ALJ if they are supported by substantial evidence in the record as a whole[.] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Because the Board is essentially an adjudicator, rather than an administrator, its interpretations are entitled to no special deference.
 
 
 9
 Id. at 1563 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); other citations omitted).
 
 Discussion
 
 10
 The ALJ considered both medical and lay evidence in making her determination that Lauderdale was totally disabled before January 1, 1974. The medical evidence the ALJ considered included thirteen x-rays, one of which, dated August 12, 1970, was interpreted, or "read," by three different doctors. All three doctors were "B-readers": physicians who have been found specially qualified to assess x-rays for evidence of pneumoconiosis. Their opinions were in conflict: one doctor thought that the x-ray revealed pneumoconiosis, one thought it did not, and the third found the film quality insufficient to offer an opinion. Another x-ray, dated May 15, 1973, was examined by a doctor--not a B-reader--who thought it showed an absence of pneumoconiosis. A third x-ray, dated March 28, 1980, was examined by a B-reader who found it positive for pneumoconiosis. The interpretations of the remaining ten x-rays were discounted by the ALJ because they did not specifically speak to the presence or absence of pneumoconiosis. The ALJ concluded, and we agree, that the x-ray evidence is inconclusive about whether Lauderdale was totally disabled due to pneumoconiosis before 1980.
 
 
 11
 In addition to the x-ray evidence, the medical evidence considered by the ALJ included a pulmonary study dated August 12, 1970, that showed, in the words of the reporting physician, "no significant alteration in pulmonary function." The ALJ found this study to be reliable evidence establishing that Lauderdale was not totally disabled on August 12, 1970.[1]
 
 
 12
 The ALJ therefore concluded that "the medical evidence tends to establish that [Lauderdale] did not have a totally disabling respiratory impairment on August 12, 1970. The medical evidence between that time and ... 1980 neither supports nor contradicts total disability due to pneumoconiosis." We think there is clearly substantial evidence in the record to support this conclusion.
 
 
 13
 In light of the inconclusive medical evidence, the ALJ went on to consider lay evidence in attempting to establish Lauderdale's date of onset of total disability. Dallas Lauderdale testified that his father had suffered from shortness of breath, coughing and a generally weak condition for the last thirty years. He also testified that from 1970 on, Lauderdale had only been able to do "little odd jobs" and had been hindered by his weak condition in performing them. Dallas Lauderdale testified that his father had been the pastor of his own church, part-time, from 1970 until his death in 1980, but for the last five years had been "very, very weak," and needed assistance from other ministers in performing his pastoral duties.
 
 
 14
 Lauderdale's testimony at a June 25, 1974, hearing was summarized in the opinion written by the ALJ who heard it, Judge Davis. Judge Davis noted that Lauderdale had testified that he had put in a garden every year until 1974, and that only in recent years had he suffered from shortness of breath. Judge Davis also noted that Lauderdale blamed his inability to sleep on his advancing years, and thought that if not for his age he could continue to work.
 
 
 15
 Several of Lauderdale's friends and associates provided affidavits describing his condition. One affiant says Lauderdale had had "shortness of breath" and had been "easy to get tired" for 25 years. Another says that Lauderdale had had shortness of breath and "slowness in walking" for 15 years, and that he could not walk long distances or exert himself. A third affiant says that for 36 years Lauderdale had suffered from weakness, shortness of breath, and a habitual cough.
 
 
 16
 The testimony of Dallas Lauderdale, the brief summary of Lauderdale's 1974 testimony, and these three affidavits are the only lay evidence in the record that could help resolve the question whether Lauderdale was totally disabled before 1974. However, because the ALJ correctly found that the medical evidence showed that Lauderdale was not totally disabled on August 12, 1970, in order to uphold the ALJ's finding, the lay evidence must provide substantial evidence for a determination that Lauderdale became totally disabled sometime between August 13, 1970 and December 31, 1973. This it does not do.
 
 
 17
 The affidavits submitted on Lauderdale's behalf are of little or no use in answering this question. All three state that Lauderdale suffered from the symptoms described for at least the last fifteen years. However, we know that these symptoms did not evidence a totally disabling condition in August 1970. Since none of the affidavits mention, or even suggest, a worsening of Lauderdale's condition between that time and 1974, they are of little probative value.
 
 
 18
 Dallas Lauderdale testified that from 1970 his father could only do odd jobs, and those only slowly and with effort. However, he also testified that his father had exhibited similar symptoms for thirty years and specifically described his father as being "very, very weak" during the last five years of his life. This testimony suggests that Lauderdale may have progressed to total disability not before January 1, 1974, but sometime around August 1975.
 
 
 19
 Finally, the brief summary of Lauderdale's testimony does not aid his son's case. His testimony that only in years just before 1974 did he suffer from shortness of breath, in fact, contradicts the affidavit testimony of three friends and associates. Furthermore, his testimony that he had put in a garden every year until 1974 could be read to imply that Lauderdale began to feel worse in 1974, after the period in question. The only helpful inference that can be drawn from this summary of Lauderdale's testimony is that in June 1974 he did not feel able to continue working. That inference is of little use in deciding whether Lauderdale was totally disabled before January 1, 1974.
 
 
 20
 When we consider the record as a whole, we conclude that it lacks substantial evidence to support the ALJ's conclusion that Lauderdale was totally disabled due to pneumoconiosis before January 1, 1974.[2]
 
 Conclusion
 
 21
 We can affirm a decision of the Board for a legal reason not advanced by the Board, United Brands v. Melson, 594 F.2d 1068, 1072 n. 10 (5th Cir.1979).[3] Because we find that the ALJ's finding that Lauderdale was totally disabled before January 1, 1974, is not supported by substantial evidence in the record viewed as a whole, we affirm the decision of the Board.[4]
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable Albert J. Engel, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 The medical evidence also included other tests done in 1980. This evidence is not relevant to the question whether Lauderdale was totally disabled before 1974. The record also includes medical evidence in reports and hospital records dated in 1974 and before. However, the ALJ found this medical evidence was not helpful because nowhere in any of these records does a doctor give an opinion as to Lauderdale's disability
 
 
 [2]
 We note that the record includes an x-ray dated May 15, 1973, that was read negative for pneumoconiosis. The ALJ gave "little weight" to this x-ray, because its reader was not a B-reader and because it fell between the inconclusive 1970 x-ray and the uncontradicted positive x-ray in 1980
 
 
 [3]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc ), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981
 
 
 [4]
 Our disposition of this case makes it unnecessary to address the other issues raised by Lauderdale and the Director