**William W. SMOAK and Rosa J. Smoak, Plaintiffs,**

v.

**INDEPENDENT FIRE INSURANCE COMPANY, Defendant.**

Civ. A. No. 3:94–521–17.

United States District Court,
D. South Carolina,
Columbia Division.

Dec. 12, 1994.

George W. Speedy, Camden, SC, for plaintiffs.

Tracy L. Eggleston, Peter F. Asmer, Jr., Cozen & O'Connor, Columbia, SC, for defendant.

## MEMORANDUM OPINION AND ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

This matter is currently before the court on Plaintiffs' and Defendant's cross-motions for summary judgment. The court heard argument on these motions on September 28, 1994 and, at the conclusion of the hearing, requested the parties to submit additional memoranda addressing an issue raised by the court, but not addressed in the briefs of either party. These memoranda have been received and reviewed by the court. For the reasons that follow, the court hereby grants summary judgment in favor of the Plaintiffs and against the Defendant.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987).

The court may properly resolve this case on cross motions for summary judgment because the material facts presented in this action are essentially undisputed. The controversy between the parties here involves only the interpretation of an insurance policy, a pure question of law for the court to decide. *Atlas Pallet Inc. v. Gallagher*, 725 F.2d 131, 134 (1st Cir.1984).

## I. Facts

The Plaintiffs, William and Rosa Smoak, built a house on Hermitage Lake in Kershaw County, South Carolina in 1962. In January 1993, after abnormally heavy rainfall, the water of the lake rose to the point where it was touching or adjacent to the foundation of the Plaintiffs' house. The water remained around the house for approximately three days. When the flood waters receded, the ground under the Plaintiffs' house shifted or subsided, causing the concrete slab on which the house was built to crack. As a result, the foundation and walls of the house were damaged.

The Plaintiffs filed a timely claim with the Defendant, Independent Fire Insurance Company, who had issued to the Plaintiffs a flood insurance policy with effective dates of July 27, 1992 to July 27, 1993. The policy issued by the Defendant is a Standard Flood Insurance Policy ("SFIP") issued pursuant to the National Flood Insurance Act of 1968, as amended, 42 U.S.C. § 4001 *et seq.*, and the regulations promulgated thereunder. The Defendant denied coverage, claiming that the Plaintiffs' loss was caused by earth movement that, argues the Defendant, is specifically excluded under the plain language of the policy. Thereafter, the Plaintiffs brought the instant action.

## II. Discussion

■ In interpreting a flood insurance policy issued pursuant to the National Flood Insurance Program ("NFIP"), this court must look to federal common law. *Sodowski v. National Flood Ins. Program*, 834 F.2d 653, 655 (7th Cir.1987), *cert. denied*, 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 619 (1988); *Atlas Pallet*, 725 F.2d at 135. Indeed, Article X of the SFIP specifically provides, "This policy is governed by the flood insurance regulations issued by FEMA [the Federal Emergency Management Agency], the National Flood Insurance Act of 1968, as

amended (42 U.S.C. § 4001, et seq.) and Federal common law." As several courts have recognized, "Congress did not intend to abrogate standard insurance law principles" when it enacted the NFIP. *Atlas Pallet,* 725 F.2d at 135. Accordingly, this court's interpretation of the policy at issue will be guided by generally accepted principles of insurance law, rather than by the statutory or decisional law of any particular state. *Id.*

■ The SFIP is a single-risk policy that insures only against "direct physical loss by or from flood." Article II of the SFIP defines "flood" as follows:

A. A general and temporary condition of partial or complete inundation of normally dry land areas from:

1. The overflow of inland or tidal waters.

2. The unusual and rapid accumulation of runoff or surface waters from any source.

3. Mudslides (i.e., mudflows) which are proximately caused by flooding as defined in subparagraph A–2 above and are akin to a river of liquid and flowing mud on the surfaces of normally dry land areas, including your premises, as when earth carried by a current of water and deposited along the path of the current.

B. The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding the cyclical levels which result in flooding as defined in A–1 above.

The policy specifically excludes from coverage "[l]oss caused by ... land sinkage, land subsidence, landslide, destabilization or movement of land resulting from the accumulation of water in subsurface land areas, gradual erosion, or any other earth movement except such mudslides (i.e., mudflows) or erosion as is covered under the peril of flood." (SFIP, Art. III, ¶ A.1.).

The Defendant argues that the damage to the Plaintiffs' home does not fall within the policy's definition of "flood" and, moreover, that the damage is specifically excluded from coverage by the policy's "earth movement exclusion" quoted above. The Defendant cites several federal cases in support of its position that coverage does not exist for the type of damage to the Plaintiffs' home.

For example, in *Sodowski v. National Flood Ins. Program,* 834 F.2d 653, 656 (7th Cir.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 619 (1988), the United States Court of Appeals for the Seventh Circuit held that soil settlement resulting from flooding is a type of earth movement excluded by the Standard Flood Insurance Policy. The *Sodowski* court was presented with facts quite similar to those of the case at bar. The Sodowskis' house, which was located on the west bank of the Illinois River, was flooded when the river overflowed its banks in December 1982. Water from the swollen river inundated the Sodowskis' basement and reached the first floor living space. The house sustained structural damage as a result of " 'settlement of the ground beneath the house, caused by a change in the consistency of the soil when the flood waters surrounded the foundation.' " *Id.* at 655 (quoting district court's findings). The court determined that the unambiguous language of the policy excluded coverage for all earth movements except for mudslides and erosion. *Id.* at 656. Because the court concluded that the soil settlement that caused the damages to the Sodowski's house was neither a mudslide nor erosion, the court denied coverage under the flood insurance policy. *Id.*

The *Sodowski* court relied heavily on the Fifth Circuit's holding in *West v. Harris,* 573 F.2d 873 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). In *West* the court examined two similar instances where homeowners' dwellings were damaged by shifting or settling of soil under the houses following a flood. The court examined the "unambiguous terms" of the policy and concluded that "[t]he policy does not cover loss caused by earth movement in the form of soil settlement." *Id.* at 877.

In addition, in *Chesapeake Ship Propeller Co. v. Stickney,* 820 F.Supp. 995 (E.D.Va. 1993), the United States District Court for the Eastern District of Virginia similarly denied coverage under a flood insurance policy to a policyholder whose property was damaged by settlement of the building's founda-

tion after a flood. The court in *Chesapeake Ship Propeller* followed the holdings of *West* and *Sodowski* and concluded that the plaintiff's property was not damaged by erosion as covered by the policy's definition of "flood." *Id.* at 999–1001; *see also Moyer v. Director, FEMA,* 721 F.Supp. 235, 238 (D.Ariz.1989); *cf. Wagner v. Director, FEMA,* 847 F.2d 515, 522 (9th Cir.1988) (in concluding that flood-induced landslide is not covered by standard flood insurance policy, noting, "As the courts have all but universally held, federal flood insurance policies do not cover losses stemming from water-caused earth movements.") (citing *Sodowski,* 834 F.2d at 657–59; *West,* 573 F.2d at 877; *Kolner v. Director, FEMA,* 1983 Fire & Casualty Cas. (CCH) 1129, 1131 (N.D.Ill.1983); *Watt v. Giuffrida,* 1984 Fire & Casualty Cas. (CCH) 988, 990 (M.D.N.C.1983); *Stenersen Corp. v. Giuffrida (In re Stenersen Corp.),* 61 B.R. 702, 708 (Bankr.D.Md.1986)).

On the other hand, the Plaintiffs argue that the damage to their home was directly caused by flooding and that their flood insurance policy should therefore afford them coverage. The Plaintiffs urge the court to reject the authorities cited by the Defendant, and instead to adopt the holding of *Quesada v. Director, FEMA,* 753 F.2d 1011 (11th Cir.), *reh'g and reh'g en banc denied,* 761 F.2d 698 (11th Cir.1985). In *Quesada,* the court also analyzed whether federal flood insurance afforded coverage to policyholders whose house was damaged by settling or compacting of the fill underneath the foundation of their house after the fill was saturated by floodwater. The court distinguished the Fifth Circuit's holding in *West v. Harris, supra,* and concluded that the plaintiffs' damages were covered by the SFIP because "the compaction [of the soil] would not have occurred but for the flooding." *Quesada,* 753 F.2d at 1014. Significantly, the court observed that since the *West* decision, the coverage of federal flood insurance policies has been broadened, specifically to include losses due to erosion caused by flooding. *Id.*

After studying the decisions interpreting the relevant portions of the National Flood Insurance Act, and after reviewing the statute, the regulations, and the specific language of the SFIP, the court has determined that neither line of authority cited by the parties is dispositive of the issues presently before the court. Were this court to base its decision in this case only on a plain reading of the Plaintiffs' flood insurance policy, then the court would be required to follow either the holding of the Fifth and Seventh Circuits or that of the Eleventh Circuit. However, the court is constrained to look beyond the language of the SFIP to reveal a significant difference between the definitions of the term "flood" in the SFIP and in the regulations. This difference, which apparently no other court has recognized or attributed any significance to,[1] compels this court to conclude that the damages to the Plaintiffs' house should be covered by their flood insurance policy.

The court may look beyond the plain language of the policy because, as noted above, the policy specifically provides that it "is governed by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001 et seq.) and Federal common law." (SFIP, Art. X). The National Flood Insurance Act provides that

> The Director [of the FEMA] shall from time to time ... provide by regulation for general terms and conditions of insurability which *shall* be applicable to properties eligible for flood insurance coverage ... *including ... any ... terms and conditions relating to insurance coverage or exclusion* which may be necessary to carry out the purposes of this chapter.

42 U.S.C. § 4013(a)(6) (emphasis added). In addition, the Act provides, "As used in this chapter ... the term 'flood' *shall* have such meaning as may be prescribed in regulations of the Director...." 42 U.S.C. § 4121(a)(1) (emphasis added).

---

1. The United States Magistrate Judge in the *Chesapeake Ship Propeller* case quoted the definition of "flood" from the regulations promulgated by the Director of the FEMA; however the court stated that definition in the SFIP was "almost identical" to that in the regulations. 820 F.Supp. at 998.

The Director has defined the term "flood" or "flooding" to include, in addition to the exact conditions enumerated in subsection (A) of the policy's definition quoted previously:

> (b) The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels *or suddenly caused by an unusually high water level in a natural body of water, accompanied by a severe storm, or by an unanticipated force of nature, such as a flash flood or an abnormal tidal surge, or by some similarly unusual and unforeseeable event* which results in flooding as defined in (a)(1) of this section.

44 C.F.R. § 59.1, at 223–24 (emphasis added). The emphasized portion of this definition of "flood" is not included in the definition in the Plaintiffs' flood insurance policy.

As the Defendant contends, the policy it issued to the Plaintiffs contains virtually the identical language as the Standard Flood Insurance Policy found in 44 C.F.R. Pt. 61, App. A(1). However, the court nevertheless concludes that the expanded definition of "flood" that is found in the regulations must be incorporated into the Plaintiffs' policy. As noted above, the policy specifically provides that it is governed by, *inter alia*, the regulations promulgated by the Director of FEMA. In addition, pursuant to 44 C.F.R.

§ 61.4(a), "All flood insurance made available under the program is subject ... [t]o the Act, the Amendments thereto, and the Regulations issued under the Act...."[2] The policy itself cannot provide less coverage than is mandated by the regulations.[3] Thus, whether the damages to the Plaintiffs' house are covered by their flood insurance policy depends on whether the damages were caused by a "flood," as defined in the regulations.

In determining whether coverage exists in this case, the court must recognize general insurance principles that the coverage portions of the policy are to be construed broadly in favor of the insured and that any "exclusions from coverage are to be strictly construed against the insurer and in favor of coverage." *Smith v. Horace Mann Ins. Co.,* 713 F.2d 674, 676 (11th Cir.1983).

Applying the expanded definition of "flood" to the facts of this case, there is no doubt that the Smoaks' house was damaged by "[t]he collapse or subsidence of land along the shore of a lake." Furthermore, it is undisputed that this collapse or subsidence of land suddenly followed "an unusually high water level in a natural body of water, accompanied by a severe storm."[4] Therefore, the only remaining issue in determining coverage in this case is whether the collapse or subsidence of the land under the Plaintiffs' house was "a result of erosion or undermining."[5]

---

2. The regulations also provide, "The definitions set forth in Part 59 of this subchapter [Subchapter B] are applicable to this part [Part 61]." 44 C.F.R. § 61.2. Part 61 includes the forms for the Standard Flood Insurance Policies.

3. This conclusion is further supported by the SFIP's "Liberalization Clause," which provides:
   > While this policy is in force, should we have adopted any forms, endorsements, rules or regulations by which the policy could be broadened or extended for your benefit by endorsement or substitution of policy form, then, such matters shall be considered to be incorporated in this policy without additional premium charge and shall inure to your benefit as though such endorsement or substitution of policy form had been made.

   (SFIP, Art. IX). This clause indicates that policyholders should receive the benefits of any broadening of coverage, by regulation or otherwise, beyond the language of the policy, while the policy is in force.

4. The Defendant's expert witness testified in his affidavit that "[a] majority of the damage noted in the structure is directly attributable to the abnormally high rise in the pond water level and the resulting soil consolidation or subsidence." Aff. of Luis A. Mariaca, P.E., ¶ 10 (hereinafter "Mariaca Aff.").

5. The court's analysis focuses only on the coverage portion of the SFIP, *i.e.*, whether the Plaintiffs' damages were caused by a "flood" as defined in the policy and regulations. The policy's earth movement exclusion, which is quoted earlier in this order, excludes from coverage all earth movement that is not within the erosion or mudslide portion of the definition of flood. Therefore, if the collapse or subsidence of the Plaintiffs' land in this case does not fall within the definition of flood, it automatically falls within the exclusion.

Neither the policy nor the regulations provide clear guidance in determining whether the subsidence in this case was a result of erosion or undermining. Although the regulations contain a definition of the term "flood-related erosion," this definition is somewhat circular because it merely tracks the erosion or undermining portion of the regulations' definition of "flood or flooding." 44 C.F.R. § 59.1, at 224. The definition in the regulations, of the term "erosion" is also not very illuminating: *"Erosion* means the process of the gradual wearing away of land masses. This peril is not per se covered under the Program." 44 C.F.R. § 59.1, at 223.

Nowhere in the policy or the regulations is the term "undermine" or "undermining" defined. One popular dictionary defines the term "undermine" as follows: "1. to dig beneath; to excavate ground from under, so as to form a tunnel or mine. 2. to wear away at the base or foundation. 3. to injure, weaken, or impair, especially by subtle or stealthy means." *Webster's New Universal Unabridged Dictionary,* at 1993 (Deluxe 2d ed. 1983). Generally, the term "erosion" implies the actual washing away of land; however, the plain meaning of the term "undermining" is broad enough to allow the court to conclude that the collapse or subsidence of the Plaintiffs' land in this case was a result of undermining suddenly caused by an abnormally high level of a lake or other body of water.

Although the Defendant's expert stated in an affidavit that "[t]he damage to the [Plaintiffs'] structure is not related to erosion or undermining," (Mariaca Aff., ¶ 8), his conclusion is not determinative. Whether the damages to the Plaintiffs' house were caused by "undermining" is a legal conclusion, involving this court's interpretation of the plain meaning of the term as used in the policy, not as used by professional engineers as a term of art. The undisputed facts in this case lead the court to conclude that the land under the Plaintiffs' home collapsed or subsided as a result of undermining caused by the unusually high water level of Lake Hermitage in January 1993.

The legislative history of the amendments that added to the National Flood Insurance Act coverage for flood-related erosion supports this court's interpretation of the SFIP. The National Flood Insurance Act, as originally enacted, excluded from coverage any damages caused by erosion. *See West v. Harris,* 573 F.2d 873, 877 (5th Cir.1978) ("In unambiguous terms the policy provides that the defendant 'shall not be liable for loss . . . by . . . erosion, earthquake, landslide or any other earth movement except such mudslides as are covered under the peril of flood.' "), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). The Flood Disaster Protection Act of 1973 added coverage, under the NFIP, for certain types of flood-related erosion. The Senate Report accompanying the 1973 amendment provides that

such erosion coverage is appropriate for the purpose of this program only to the extent that it is flood-related; *that is,* suddenly caused by an unusually high water level in a natural body of water, accompanied by a severe storm, or by an unanticipated force of nature, such as a flash flood or an abnormal tidal surge, or by some similarly unusual and unforeseeable event. The amendment is not intended to provide coverage for the losses incurred when properties built too close to shorelines are eventually damaged as a result of normal and continuous wearing away of land by ordinary wave action. If the loss is gradual and takes place over the course of years, it would not be covered.

S.Rep. No. 583, 93d Cong., 1st Sess. 14 (1973), *reprinted in* 1973 U.S.C.C.A.N. 3217, 3229. As the legislative history indicates, in extending coverage under the SFIP to flood-related erosion, Congress apparently was not concerned with whether the flood waters actually washed away the land from the surface or whether the flood waters caused the land to collapse from under the surface. Instead, Congress focused on the timing and foreseeability of the cause of the collapse or subsidence of the land. The limitations on coverage for flood-related erosion were clearly intended to prevent coverage for land movements that are unrelated to flooding, those that occur gradually, or those that would have eventually taken place even in the absence of flooding.

These concerns compel the court to stress the narrowness of its ruling. To be covered

under the SFIP, damages must have been caused by a flood as defined by the policy and the applicable regulations. Certainly, not all water-caused earth movements will fall within this definition. The court recognizes that overly broad interpretations of standard flood insurance policies that " 'afford[ ] much wider coverage than is contemplated by the National Flood Insurance Program FEMA administrators ... could result in premiums beyond the pocketbooks of many of our citizens the program was designed to reach.' " *Chesapeake Ship Propeller Co. v. Stickney,* 820 F.Supp. 995, 1000 (E.D.Va.1993) (quoting *Quesada v. Director, FEMA,* 753 F.2d 1011, 1014 (11th Cir.1985) (Tjoflat, J., dissenting)); *cf. Nelson v. Becton,* 929 F.2d 1287 (8th Cir.1991) (refusing to apply the doctrine of reasonable expectations[6] in construing flood insurance policies under the NFIP). Nevertheless, the court determines that the National Flood Insurance Program was intended to protect the Plaintiffs from the type of damage done to their home under the circumstances in this case.

### III. Conclusion

For the foregoing reasons, the court concludes that the damages to the Plaintiffs'

home were caused by "flood" and that those damages are, therefore, covered by their flood insurance policy. Accordingly, the court grants summary judgment in favor of the Plaintiffs and against the Defendant.

In their complaint, the Plaintiffs allege that the damages to their home totalled twenty-three thousand, two hundred and fifty-six dollars ($23,256.00). The prayer for relief in the case requests a judgment against the Defendant for that amount, plus "attorneys fees under the statutes of the State of South Carolina; for cost and for such other further relief as the Court may deem just and proper." Because the Defendant's answer denies the Plaintiffs' allegations of damages and because the issue of damages was not presented to the court in either party's motion, the court conducted a telephonic conference with the attorneys for both sides on December 8, 1994. After the court informed the attorneys of its ruling in the case, the Defendant's attorney indicated that the amount of actual damages sought by the Plaintiffs was not disputed. In addition, the Plaintiffs' attorney conceded that the Plaintiffs could not recover attorney's fees or pre-judgment interest[7] from the Defendants.

---

6. The doctrine of reasonable expectations allows a court, in some circumstances, to disregard the plain language of an insurance policy to protect the insured's objectively reasonable expectation of coverage. *See generally* Robert Keeton, *Insurance Law Rights at Variance With Policy Provisions,* 83 Harv.L.Rev. 961, 967 (1970). In *Nelson v. Becton,* 929 F.2d 1287 (8th Cir.1991), the Court of Appeals for the Eighth Circuit refused to apply the doctrine to afford coverage under a flood insurance policy for damage to the plaintiffs' basements, which are specifically excluded from coverage by the plain language of the SFIP. The *Nelson* court acknowledged that its interpretation of flood insurance policies under the NFIP must be guided by federal common law, which incorporates standard principles of insurance law; however the court concluded that the reasonable expectations doctrine was not part of the body of standard insurance law. *Id.* at 1291. In *Nelson,* however, Senior Judge Heaney wrote a compelling dissent, arguing that the doctrine of reasonable expectations was becoming a standard principle of insurance law and that it should be applied to flood insurance as well. *Id.* at 1293 (Heaney, J., dissenting).

Although the Plaintiffs did not raise the doctrine of reasonable expectations as a theory of recovery in this case, were this doctrine applica-

ble to flood insurance under the NFIP, it might be used here, as an alternative theory, to defeat the Defendant's motion for summary judgment. The Plaintiffs, who owned a house on a lake, purchased flood insurance presumably to protect their property in the event that the lake flooded. One could certainly argue that the Plaintiffs had a reasonable expectation that their flood insurance would provide coverage for the type of damage suffered under the circumstances presented here.

Because this argument is not before the court, however, the court offers no opinion as to whether the doctrine of reasonable expectations should even apply to flood insurance under the NFIP.

7. The Plaintiffs' complaint did not specifically request pre-judgment interest; however, the request in the prayer for relief for "such other further relief as the Court may deem just and proper" could be read to include an award of pre-judgment interest. Because the Plaintiffs concede that they are not seeking pre-judgment interest, the court need not reach the issue of whether such relief is proper under the National Flood Insurance Program. *See West v. Harris,* 573 F.2d 873, 882–84 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635

Therefore, summary judgment is hereby awarded to the Plaintiffs in the amount of twenty-three thousand, two hundred and fifty-six dollars ($23,256.00).

IT IS SO ORDERED.

(1979); *Taylor v. Omaha Property & Cas. Ins. Co.,*     739 F.Supp. 1069, 1073 (E.D.Va.1990).