**Robert STEVENS, et al., Plaintiffs,**

v.

**BANKERS INSURANCE CO., Defendant.**

No. C–96–0917 EFL.

United States District Court,
N.D. California.

July 8, 1997.

Marcus D. Merchasin, San Francisco, CA, for Plaintiffs.

Frank P. Kelly, Dryden, Margoles, Schimaneck, Hartman, Kelly & Wait, San Francisco, CA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LYNCH, District Judge.

### I. INTRODUCTION

On plaintiffs' motion for summary judgment, the Court must decide whether loss of inventory not submerged under water but damaged by flood water is a covered loss under a Standard Flood Insurance Policy ("SFIP") issued pursuant to the National Flood Insurance Act. *See* 42 U.S.C. §§ 4001–4128. Simply put, the Court's answer is yes.

### II. BACKGROUND

Plaintiffs Bob and Mary Stevens own and operate a decorating supply store in Napa, a town about 50 miles north of San Francisco in California's wine country. As would be expected of a fertile valley, many rivers wind through the area. These rivers not infrequently flood and property damage ensues. Plaintiffs sought to steel themselves against potentially devastating loss by purchasing a flood insurance policy from defendant Bankers Insurance Company. The policy was issued pursuant to the National Flood Insurance Act of 1968 and applicable amendments, and interpretive rules of Title 44 of the Code of Federal Regulations.

In March 1995, the Napa River overflowed and substantial floodwater entered the decorating store. Plaintiff's wallpaper stock was destroyed. While the inventory was not submerged, ambient moisture was trapped in the plastic wrapping around each roll and the paper was rendered unsalable. Plaintiffs timely filed a claim for their lost wallpaper.

A public adjuster viewed plaintiffs' premises. He found that the wallpaper inventory was a loss covered by the policy because the

flood was the proximate cause of the damage. Defendant agreed that the moisture caused the damage but, nonetheless, denied the claim. It took the position that the damage was not a direct physical loss by or from flood. If it was such a loss it was excluded by a clause excepting moisture damage "resulting primarily from any condition substantially confined to the insured building." Defendant submitted the split of opinion to a claims director at the regulatory agency responsible for administration of the NFIP, the Federal Emergency Management Agency ("FEMA").[1] The claims director advised defendant to "continue [its] denial and give notice to the insureds that they have one year to file suit in the Federal District Court." [2]

Plaintiffs promptly filed suit. They argue that defendant's denial constitutes breach of contract and tortious breach of contract (bad faith). Earlier this year, the Court denied defendant's motion for summary judgment finding that the policy did not exclude, as a matter of law, the type of loss claimed by plaintiffs. Plaintiffs now ask the Court for summary judgment on both liability and damages.

For the reasons stated below, the Court finds that, as a matter of law, plaintiffs' lost wallpaper inventory is a loss compensable under the flood insurance policy. The Court, therefore, grants plaintiffs' motion for liability on the breach of contract claim. Because the facts do not demonstrate bad faith, the Court denies summary judgment on the tort claim. Finally, the Court finds that summary judgment on damages would be inappropriate at this time because plaintiffs have failed to establish precisely the amount of their loss.

## III. JURISDICTION

 Federal district court has exclusive original jurisdiction over cases involving challenged denial of claims by holders of insurance policies written consistent with the National Flood Insurance Program. 42 U.S.C. § 4072; see 42 U.S.C. §§ 4001–4128. Interpretation of an insurance policy is a question of law properly resolved by the court. *Aschenbrenner v. United States Fidelity & Guaranty Co.*, 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137 (1934). Federal common law controls. *See, e.g., Smoak v. Independent Fire Ins. Co.*, 874 F.Supp. 110, 111 (D.S.C.1994).

## IV. APPLICABLE LAW AND ANALYSIS

### A. Breach of Contract Liability

The SFIP is a single-risk insurance policy that protects against all "direct physical loss

---

1. In a letter to a FEMA claims manager dated August 8, 1995, defendant stated:

 Dear Mr. Shortly:
 We have a coverage question which we would like [FEMA's] opinion on. The facts are as follows:
 On 3–9–95, a General Condition of Flooding caused this risk to accumulate up to eight inches of water inside. The insured was allowed to return on the third day following.
 A large portion of the damage includes wallpaper. The majority, if not all of the wallpaper was displayed on shelving above the water line. Understandably, however, the moisture content inside the risk has made all of it unsalable.
 The insured's public adjuster, Jahn Miller, opines that since the flood was the proximate cause of the damage, there is coverage. Bankers takes the position that the wallpaper is not covered for the following reasons:
 * The damage to the wallpaper was not a DIRECT PHYSICAL LOSS BY OR FROM FLOOD as defined by the NFIP policy.
 * Moisture damage is expressly excluded [from] coverage under ARTICLE 3—LOSSES NOT COVERED, B. 5.

 If there is any further information you need to evaluate this situation, please feel free to contact the adjuster handling this case, ... Thank you for your time and consideration in this matter.
 Very Truly Yours,
 Teresa Heller, AIC
 Property Division Manager
 (Emphasis in original.)

2. The complete text of the claims manager's response dated September 11, 1995, is as follows:

 Dear Ms. Heller:
 In reply to your letter of August 1995, this will confirm your findings.
 This damage appears to be a consequential loss, and not covered under the SFIP. Please continue your denial and give notice to the insured that they have one year to file this suit in the Federal District Court in which the paint company is located.
 Thanks for letting me look at this claim.
 Sincerely,
 [signed]
 James S.P. Shortley
 Director of Claims1

by or from flood." "Direct physical loss by or from flood" is defined as:

[A]ny loss in the nature of actual loss of or physical damage, evidenced by physical changes, to the insured property (building or personal property) which is *directly and proximately caused* by a "flood" (as defined in this policy).

General Property Policy at 2. Damages expressly excluded as covered loss include:

Water, moisture, mildew, mold, or mudslide (i.e., mudflow) damage *resulting primarily from any condition substantially confined to the insured building* or from any condition which is within the Insured's control (including but not limited to design, structural or mechanical defects, failures, stoppages or breakages of water sewer lines, drains, pumps, fixtures or equipment).

*Id.* at Article 3—Losses Not Covered.

Providing some guidance for what is covered as "direct loss from flood," Congress announced an Arising From Test:

To carry out the purposes of this chapter, the Director of the Federal Emergency Management Agency is authorized to establish and carry out a national flood insurance program which will enable interested persons to purchase insurance against loss *resulting from physical damage to or loss of real property or personal property related thereto arising from any flood occurring in the United States.*

42 U.S.C. § 4011 (emphasis added).

Plaintiffs argue that the damaged wallpaper is a compensable loss within the policy. If the policy language is ambiguous, they argue, it must be construed to include the wallpaper loss.

Defendant insurer maintains its position that the damage to the wallpaper was not a "direct physical loss by or from flood" because flood water did not touch the rolls. Defendant further maintains its argument that the wallpaper claim is properly excluded because "direct loss" read in conjunction with the exclusion for damages substantially confined to the insured building or from any condition which is within the insured's control. *Wagner v. Director, Federal Emergency Management Agency,* 847 F.2d 515 (9th Cir.1988). The moisture was confined to the building and the plaintiffs could have removed the inventory from the store and avoided the harm. Finally, defendants before this Court add the argument that the letter from a FEMA claims administrator advising Banker's to deny the claim should control. The letter is an interpretation of FEMA's own regulations, and thus, deserving of great deference. *Lollar v. Alabama By–Products Corp.,* 893 F.2d 1258 (11th Cir. 1990).

The Court agrees with plaintiffs: the inventory loss is covered by the policy. Accordingly, the Court does not reach plaintiffs' ambiguity argument.

■] The Court rejects defendant's first argument out of hand. The wallpaper is a direct loss of personal property caused by flood. The river overflowed, the water coursed through the town of Napa, and, eventually, poured into plaintiffs' store. The water flowed over the floor and low-lying inventory. Plaintiffs were unable to enter the store for three days. Over that time and in the March heat, substantial moisture entered the air. Some came to rest on the rolls of wallpaper held for sale by plaintiffs. The wallpaper was rendered unsalable.

Defendant's argument that a covered loss occurs only when floodwaters over run the damaged property is contrary to settled authority, not to mention common sense. This argument is inconsistent with the Arising From Test articulated by Congress. Loss resulting from physical damage to or loss of insured personal property arising from any flood is covered loss under the NFIP. The wallpaper loss, in every sense of the words, constitutes damage arising from the flood. Defendant's argument is entirely at odds with Congress's guidance. The Court favors the congressional standard.

Additionally, courts up and down the eastern seaboard have held that a loss may be covered even if the property damaged is not overrun by flood waters. *See, e.g., Plywood Property Associates v. National Flood Ins. Program,* 928 F.Supp. 500 (D.N.J.1996) (allowing claim for damage caused by flood

where water did not touch property); and *Smoak v. Independent Fire Ins. Co.*, 874 F.Supp. 110 (D.S.C.1994) (damage incidental to flood water covered); and *Gibson v. Secretary, U.S. Dep't of Housing & Urban Development*, 479 F.Supp. 3, 5–6 (M.D.Pa.1978) (dwelling damaged but not touched by water covered where loss proximately caused by flood). There is nothing unique or different about western floods or property damage rendering this authority inapposite. This Court, therefore, will follow the courts that have gone before it and so hold.

▪ This is not an esoteric matter of phenomenology. Common sense[3] counsels that when the risk insured against occurs, property is damaged, and but for the occurrence the damage would not have happened, the damage is a direct result of the occurrence and the loss should be covered. The eventuality insured against, the property, and its damage should be the insurer's focus.

The loss suffered by plaintiffs is no less a direct result of the flood than is an uncharred wall's collapse a direct result of a fire that ravaged the rest of the building. One may say gravity rather than fire brought down the wall. But in common parlance the collapse was a direct result of the fire. Surely, one would expect his insurer protecting from direct loss from fire to cover the loss of the uncharred wall just as it covered those that were burned.

▪] The loss must be understood to be a direct loss from flood.[4] The flood was also the proximate or reasonable cause of the damage. An occurrence is the proximate cause of an event if it is the predominate and determining cause of the loss. Articulated precisely:

> Proximate cause in the insurance field has been variously defined. It has been said

that proximate cause is the cause nearest the loss. Again, courts have properly stated that proximate cause does not necessarily refer to the cause does not necessarily refer to the cause nearest in point of time to the loss. But the true meaning of that maxim is, that it refers to that cause which is most nearly and essentially connected with the loss as its efficient cause.

*Standard Oil Co. of New Jersey v. United States*, 340 U.S. 54, 58, 71 S.Ct. 135, 137, 95 L.Ed. 68 (1950).

But for the flood, the wallpaper would not have been damaged. Flood water, in the form of ambient moisture, entered the wrapped rolls and destroyed the paper. No circumstances intervened to break the direct relationship between the flood and the damage. *See, e.g., Habaz v. Employers' Fire Ins. Co.*, 243 F.2d 784 (8th Cir.1957) (flood water proximate cause of loss when it is the initiating and resulting cause of damage). The damage was caused by the flood water and a reasonably foreseeable consequence of the water's entry into the store. There is no argument that the flood was not the proximate cause of the damage.

▪s argument that the wallpaper damage was excepted under the policy is, likewise, rejected. As the Court noted at a previous hearing, the exclusion relied upon is limited to circumstances where a peculiar condition on the property intervenes in the causal chain to allow the flood water to do more damage than it would have done if the condition were not present. This is not the situation here.

Further, there is no evidence that plaintiffs did not exercise due diligence mitigating any damage from the flood. Plaintiffs timely entered their store and assessed the damage.

---

3. The common-sense reading of a contract term is material to federal common law interpretation. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985); *see also Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) (commonsense view of the language of the clause important consideration).

4. Defendant's argument that the inventory loss is not a direct loss casts itself and the Court in familiar roles from a classic tale:

> Alice felt dreadfully puzzled. The Hatter's remark seemed to her to have no sort of meaning in it, and yet it was certainly English. "I don't quite understand you," she said, as politely as she could.

Lewis Carroll, *Alice's Adventures in Wonderland* 112 (Octopus Books Ltd. ed., 1978) (1865).

They promptly reported their loss and followed procedures for filing a claim.

Defendant's reliance on *Wagner v. Director, Federal Emergency Management Agency,* 847 F.2d 515 (9th Cir.1988), is entirely misplaced. In *Wagner,* the Ninth Circuit indeed found that the policy exclusion for damage caused by earth movement barred recovery by plaintiff. The ruling, though, was not based on a tandem reading of direct cause and the earth-movement exclusion. Plaintiff's circumstances were squarely within the exclusion. *Id.* at 521–22. *Wagner's* relevance to this case is limited to the proposition that circumstances must square with those noted in the clause in order for an exclusion to bar a claim. Plaintiffs' circumstances do not fall squarely within the proffered exclusion clause.

In sum, the damages are a direct physical loss by or from flood NOT specifically excluded from the coverage of the policy. *Plywood Property Associates v. National Flood Ins.,* 928 F.Supp. 500, 504–05 (D.N.J.1996) (loss that would not have occurred but for the flood is not recoverable only if it comes within one of the specific exclusion clauses). They are, therefore, a covered loss under the policy.

■■■] Defendant's final argument that the letter from the FEMA claims director constitutes authority supporting denial of plaintiffs' claim is without support. The Court readily accepts the proposition that a regulatory interpretation from a proper authority receives special deference in appropriate cases in the district court. *See National Railroad Passenger Corp. v. Boston and Maine Corp.,* 503 U.S. 407, 421–22, 112 S.Ct. 1394, 1403–04, 118 L.Ed.2d 52 (1992). The claims director's letter, however, is neither a regulatory interpretation nor the opinion of an authority deserving deference in this Court.

The case law cited by defendant is not to the contrary. In *Lollar v. Alabama By-Products Corp.,* 893 F.2d 1258 (11th Cir. 1990), the court considered the deference to be given an administrative law judge's findings in a black lung case. "Courts must defer to an agency's consistent interpretation of its own regulation unless it is plainly erroneous or inconsistent with its own regula-

tion." *Id.* at 1262 (internal quotations omitted). "We owe this deference," the court continued, "only to [the Director of the Agency] as the relevant policymaker." Decisions by other members of the agency receive no special deference.

The claims director does not purport to be a policymaker entitled to deference under the NFIP. Indeed, the director's letter comments on specific contract provisions and their applicability under given circumstances. It does not pretend to be an official interpretation of a federal regulatory guideline like that discussed in *Lollar.* Federal common law, not the read of a claim administrator, controls. *See Smoak v. Independent Fire Ins. Co., supra,* 874 F.Supp. at 111.

Because the Court finds that the 1995 Napa River flood was a direct and proximate loss not excluded by the SFIP, plaintiffs' motion for summary judgment on liability is granted.

### B. Breach of Contract Damages

■■] Plaintiffs ask for summary judgment on damages as well as liability. They offer several theories resulting in awards ranging from $24,000 to over $1 million. Defendant argues that if it is liable for the wallpaper loss, plaintiffs' damages are grossly overstated.

The Court finds that there is inadequate evidence on damages to rule on this aspect of plaintiffs' motion. The only support submitted by plaintiffs is an unexplained, handwritten list describing several inventory and placing a value on each item. It is unclear just what inventory is described and whether all the inventory described was lost. It is likewise unclear whether the dollar amounts listed are cost or retail value. This issue must, therefore, be resolved on a later day.

### C. Bad Faith Claim

■■] While the Court is unimpressed with defendant's arguments against liability, there is insufficient evidence of bad faith on this record. Plaintiffs focused their attention in this motion on interpretation of the contract and presented little evidence relevant to bad

faith. An inference of bad faith may be gleaned from the record as it stands. A finding of bad faith, though, is best left as a question of fact for the jury. Therefore, plaintiffs' motion for summary judgment on this claim is denied.

## V. CONCLUSION

For the reasons stated above and GOOD CAUSE APPEARING, the Court ORDERS that:

1. Plaintiffs' motion for summary judgment on the liability issue of the breach of contract claim is GRANTED;

2. Plaintiffs' motion for summary judgment on the damages prong of the breach claim is DENIED;

3. Plaintiffs' motion for summary judgment on their tortious breach of contract is DENIED.

IT IS SO ORDERED.