PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

WILLIAM W. SMOAK; ROSA J. SMOAK,
<u>Plaintiffs-Appellees,</u>

v.

INDEPENDENT FIRE INSURANCE
COMPANY,
<u>Defendant-Appellant.</u>

No. 95-1100

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Joseph F. Anderson, Jr., District Judge.
(CA-94-521)

Argued: September 28, 1995

Decided: June 23, 1999

Before WIDENER and MOTZ, Circuit Judges,
and HALL, Senior Circuit Judge.

_____

Vacated and remanded by published opinion. Judge Widener wrote
the majority opinion, in which Judge Motz concurred. Judge Hall
wrote a dissenting opinion.

_____

COUNSEL

**ARGUED:** Allan Levin, COZEN & O'CONNOR, Columbia, South
Carolina, for Appellant. George W. Speedy, FURMAN, SPEEDY &
STEGNER, Camden, South Carolina, for Appellees. **ON BRIEF:**
Tracy L. Eggleston, COZEN & O'CONNOR, Columbia, South Caro-
lina, for Appellant.

**OPINION**

WIDENER, Circuit Judge:

Defendant Independent Fire Insurance Co. (Independent) appeals the district court's grant of summary judgment holding the subsidence of land beneath plaintiffs William and Rosa Smoak's lakefront home to be a covered loss under a Standard Flood Insurance Policy (policy or SFIP) issued by Independent pursuant to the National Flood Insurance Act of 1968, (the Act) 42 U.S.C. § 4001 et seq. We vacate the district court's judgment and remand this case for further consideration.

Following heavy rains in January 1993, the waters of Hermitage Lake in Camden, South Carolina rose to the level of the foundation of the Smoaks' home and stood for three days. When the waters receded, the land beneath the home subsided, cracking a concrete slab that formed part of the foundation and causing an undisputed $23,256 in damages to the foundation and walls of the house. The Smoaks held a flood insurance policy issued by Independent with effective dates of July 27, 1992 to July 27, 1993. Independent denied the Smoaks' insurance claim, however, on the basis that the policy excluded the earth movement that damaged their home.

The Smoaks' policy promised to indemnify them for "Direct Physical Loss by or from Flood" as that phrase is defined in the policy but specifically excluded:

> Loss caused by . . . land sinkage, land subsidence, landslide, destabilization or movement of land resulting from the accumulation of water in subsurface land areas, gradual erosion, or any other earth movement except such mudslides (i.e. mudflows) or erosion as is covered under the peril of flood.

The policy defined a "flood" to be:

> A. A general and temporary condition of partial or complete inundation of normally dry land areas from:

2

1. The overflow of inland or tidal waters.

2. The unusual and rapid accumulation or runoff of surface waters from any source.

3. Mudslides (i.e. mudflows) which are proximately caused by flooding as defined in subparagraph A-2 above and are akin to a river of liquid and flowing mud on the surfaces of normally dry land areas . . . as when earth[is][1] carried by a current of water and deposited along the path of the current.

B. The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding the cyclical levels which result in flooding as defined in A-1 above.

Thus, under the terms of the policy, the earth movement that caused the Smoaks' loss -- land subsidence -- was a covered peril only if it was "a result of erosion or undermining caused by waves or currents exceeding cyclical levels . . . ."

To find that the Smoaks' casualty was a covered loss, the district court relied on a difference in the definition of flood between the policy and other Federal Emergency Management regulations which expanded the definition of flood.[2] The district court, however, failed

_____

[1] The definition of flood contained in the Smoaks' policy is verbatim the definition of flood in the policy effective when the policy was issued, 44 C.F.R. Pt. 61, App. A(1)(1991) at 255, except for this omission of the word "is."

[2] An expanded definition appears at 44 C.F.R. § 59.1 that defines not only flood but also the term "flooding." It is identical to the definition contained in the Policy and the Smoaks' policy except for subparagraph 3(b), which adds the language italicized below:

(b) The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated

3

to recognize that the policy explicitly limits the definition of flood to the definition set forth in the policy itself. The policy insured the Smoaks from "Direct Physical Loss by or from Flood as defined in Article II of this Agreement . . . ." 44 C.F.R. Pt. 61, App. A(1) (1991) at 288. In defining Direct Physical Loss by or from Flood, Article II constrains the meaning of flood to the definition contained in the policy:

> **Direct Physical Loss by or from Flood** means any loss in the nature of actual loss of or physical damage evidenced by physical changes to the insured property (building or contents (personal property)) which is directly and proximately caused by a flood (as defined in this Agreement) . . . .

44 C.F.R. Pt. 61, App. A(1) (1991) at 289 (emphasis added). The policy has restricted the meaning of flood since at least March 31, 1973, the effective date of the oldest policy construed in West v. Harris, the first case to consider the question. 573 F.2d 873, 875-76 (5th Cir. 1978), cert. denied, 440 U.S. 946 (1979); see also 37 Fed. Reg. 1036 (1972) (limiting the definition of flood, before erosion and undermining coverage were added, to allow expansion of the National Flood Insurance). Therefore, the district court's decision was incorrectly based on a definition of "flood" not contained in the policy.

_____

> cyclical levels or suddenly caused by an unusually high water level in a natural body of water, accompanied by a severe storm, or by an unanticipated force of nature, such as a flash flood or an abnormal tidal surge, or by some similarly unusual and unforeseeable event which results in flooding as defined in (a)(1) of this section.

44 C.F.R. § 59.1 (1995) (emphasis added). The district court altered the policy's definition of flood by reading the expanded definition into the policy. The court reasoned that since the Act gives the Director of FEMA power to, by regulation, define "flood," and establish mandatory "terms and conditions relating to insurance coverage or exclusion," and since flood insurance issued under the NFIP is subject to FEMA's regulations, the policy would provide less coverage than the regulations required unless the Policy incorporated the expanded definition of flood.

4

Coverage for the Smoaks' loss could properly be extended by operation of the policy liberalization clause, but only if coverage for land subsidence was made effective by statute or regulation prior to the date of the Smoaks' loss in January 1993. The liberalization clause in the Smoaks' Policy provides:

> While this policy is in force, should we have adopted any forms, endorsements, rules or regulations by which this policy could be broadened or extended for your benefit by endorsement or substitution of policy form, then, such matters shall be considered to be incorporated in this policy without additional premium charge and shall inure to your benefit as though such endorsement or substitution has been made.

44 C.F.R. Pt. 61 App. A(1) (1991) at 300. In Leland v. Federal Insurance Administrator, 934 F.2d 524, 528 (4th Cir. 1991), we construed identical language and determined "[t]he liberalization provision does not give retroactive effect to new Policy terms; rather, it serves as a device for automatically reading into existing policies beneficial changes as soon as FEMA makes them and declares them to be in force." Citing Criger v. Becton, 902 F.2d 1348, 1352 (8th Cir. 1990). On October 1, 1994, a final rule became effective that amended the policy to add coverage for land subsidence provided certain conditions are met.[3] Since the Smoaks' loss occurred before the effective

_____

**3** The amendment added a new paragraph B.3 at Article 3 -- Losses Not Covered of all three Policy policies which reads:

> Land subsidence, sewer backup, or seepage of water unless, subject to additional deductibles as provided for at Article 7, (a) there is a general and temporary condition of flooding in the area, (b) the flooding is the proximate cause of the land subsidence, sewer backup, or seepage of water, (c) the land subsidence, sewer backup, or seepage of water damage occurs no later than 72 hours after the flood has receded, and (d) the insured building must be insured, at the time of the loss, for at least 80 percent of its replacement cost or the maximum amount of insurance available under the National Flood Insurance Program.

58 Fed. Reg. 62420, 62426 (November 26, 1993).

date of the new coverage, this amendment cannot be used to provide coverage under the policy.

We note that other circuits have considered the earth movement exclusion and the policy's language in determining whether the policy provides coverage for losses similar to that incurred by the Smoaks. Upon remand, the district court should determine which precedent to follow and whether the facts here are more analogous to those in Quesada v. Director, FEMA, 753 F.2d 1011 (11th Cir. 1985), in which the court found coverage, or more similar to those in Wagner v. Director, FEMA, 847 F.2d 515 (9th Cir. 1988), Sodowski v. Nat'l Flood Insurance Program, 834 F.2d 653 (7th Cir. 1987), cert. denied, 486 U.S. 1043 (1988), and West, 573 F.2d at 873, in which the courts did not find coverage under the Policy.

For the foregoing reasons, the district court's judgment is

VACATED AND REMANDED
FOR FURTHER CONSIDERATION.

HALL, Senior Circuit Judge, dissenting:

I respectfully dissent. I would affirm on the reasoning of the district court. Smoak v. Independent Fire Insurance Co. , C/A No. 3:94-521-17 (D. S.C., Dec. 12, 1994) (Memorandum Opinion and Order).

6